MILLER *v.* MILLER ET AL.

[No. 16,669. Filed January 6, 1942.]

*Himelick & Himelick,* of Connersville, *Vernon & Vernon* and *Kivett & Kivett,* all of Martinsville, and *C. M. George,* of Rushville, for appellant.

*Clarence S. Roots,* of Connersville, and *Kiplinger & Kiplinger* and *Titsworth & Titsworth,* all of Rushville, for appellees.

FLANAGAN, J.—On May 24, 1911, Jesse I. Lefforge was the owner of seventy-eight acres of land in Rush County, Indiana, and his wife, Loell Lefforge, was the owner of forty-four acres of land in Rush County and twenty-one acres in Franklin County. On that date they signed and acknowledged, but did not deliver to anyone, two warranty deeds in the usual form, each naming appellee Otis L. Miller as grantee.

One deed, naming "Jesse I. Lefforge and Loell Lefforge, his wife" as grantors, described the seventy-eight acres of Rush County real estate owned by Jesse I. Lefforge and also the forty-four acres of Rush County real estate owned by Loell Lefforge. It also contained the following statement:

"I, the grantor, reserving and excepting from the real estate above conveyed an estate therein for and during a period of our natural life this deed will be placed in the custody of a person selected by me with instructions to deliver the same to Otis L. Miller, after the death of both myself and wife, Loell Lefforge."

The other deed, naming "Loell Lefforge and Jesse I. Lefforge, her husband" as grantors, described the twenty-one acres in Franklin County owned by Loell Lefforge. It contained the following statement:

"This conveyance to be placed in the hands of a person selected by us with instructions to deliver to Otis L. Miller immediately after our death."

On September 1, 1914, the Lefforges sold off from the land described in the first deed twenty-one acres of the Rush County land owned by Mrs. Lefforge.

The Lefforges did not deliver to anyone for any purpose either of the above deeds prior to the death of Jesse I. Lefforge on February 14, 1915. He died intestate leaving his widow as his sole and only heir at law, and she thereby became owner of the real estate theretofore owned by him. She continued to own all the real estate described in the two deeds except the twenty-one acres which had been sold off as above stated, and she continued to keep said deeds in her bank lock box until June 26, 1934.

Appellee Otis L. Miller was a cousin of Loell Lefforge. His parents died when he was ten years old and he was taken into the Lefforge home and reared by the Lefforges, who were themselves childless, as their own child. Though there was never a formal adoption, he was regarded by them as their son and he regarded them as his parents. He continued to live with the Lefforges until his marriage in 1897, and thereafter the family relationship and mutual affection continued throughout the lives of the Lefforges.

On June 26, 1934, Loell Lefforge sought legal advice as to what was necessary to convey her property, described in the two deeds, to appellee Otis L. Miller. Upon instruction of her attorney, and for the purpose of conveying said property to Otis L. Miller, she obtained possession of the two deeds and made formal delivery of them to appellee Otis L. Miller, stating at the time that the delivery was for the purpose of making him the owner of the real estate in said deeds described. The deeds were at that time accepted by the grantee.

On July 20, 1934, Mrs. Lefforge died leaving no testa-

mentary disposition of any real estate and leaving as her next of kin two nephews, appellant and one Leslie Miller. Appellant has become the owner of any interest Leslie Miller had in any real estate as heir of Loell Lefforge.

Appellant claims that the two deeds to appellee Otis L. Miller were ineffective as conveyances and that he is therefore the owner of the real estate described in them, and brought this action against appellee Otis L. Miller and his wife, appellee Mary Miller, to quiet his title thereto.

Appellee Otis L. Miller filed a cross-complaint to quiet title to said real estate in himself. The trial court found the facts specially, stated its conclusions of law thereon, and entered a decree quieting title in appellee Otis L. Miller.

The facts as we have stated them were so found by the trial court. The only question presented is whether the two deeds hereinabove referred to were effective as conveyances and that question is raised by exceptions to the conclusions of law.

The deeds contain all the formal requisites of warranty deeds; and it is specifically found that Loell Lefforge intended, by delivering them to appellee Otis L. Miller, to convey to him all the real estate described in them then owned by her.

The name of Jesse I. Lefforge and the statements contained in the deeds as to the purpose of placing the deeds in the hands of a third person for delivery to appellee Miller upon the death of the Lefforges were mere surplusage and could not nullify the clear purpose of Mrs. Lefforge at the time the deeds were delivered. *Light* v. *Lane* (1873), 41 Ind. 539.

Likewise the fact that some of the real estate described in the deeds was sold off between the time the

deeds were written and the time of their delivery will not destroy the efficacy of the deeds to carry out the clear intent of the grantor to convey that which she continued to own at the time of the delivery. The fact that more real estate is described in a deed than is owned by the grantor will not destroy its operative effect as to the described land that is owned by the grantor. 16 Am. Jur., Deeds, § 329, p. 623.

Appellant contends that at the time Loell Lefforge attached her name to the deeds she signed as to her own lands under the disabilities of a married woman and. as to her husband's property as a releasor and not a grantor; that for a number of reasons the deeds became void and a nullity upon the death of her husband because they were not delivered to anyone prior to that time, and therefore could not be ratified, confirmed, or converted into operative conveyances. It is appellant's contention that under the circumstances an effective conveyance would require a new signing as well as a delivery.

We cannot agree with this contention. It must be remembered that a deed is consummated by delivery by the grantor and its acceptance by the grantee and becomes operative from that time. *Sims* v. *Smith* (1885), 99 Ind. 469, 50 Am. R. 99; *Cassidy* v. *Ward* (1919), 70 Ind. App. 550, 123 N. E. 724; *Harwood* v. *Masquelette* (1932), 95 Ind. App. 338, 181 N. E. 380; *Love* v. *Wells* (1865), 25 Ind. 503; *Freeland* v. *Charnley* (1881), 80 Ind. 132. Until delivery it is inoperative, a mere scrap of paper. As a conveyance, being nothing, it neither becomes void nor voidable. See 16 Am. Jur., Deeds, § 23, p. 450. Being neither void nor voidable there is no question of ratification or disaffirmance.

Up to the time of delivery the deeds here in question, though they contained all the formal requisites of deeds, including the signature of Loell Lefforge, were inoperative scraps of paper into which life could be breathed only by the act of Loell Lefforge in delivering them to the named grantee. This she did. When she did that she adopted the two scraps of paper as her instrumentalities for carrying out her purpose. It is immaterial how she originally signed the papers, whether as grantor or releasor, as a married or an unmarried woman. At the time of delivery the signatures were adopted by her as an unmarried woman and as a grantor for the purpose of conveyance. The law does not require the useless, and it certainly would have been a useless gesture for her to physically retrace her handwriting on the pieces of paper or write thereon her signature again.

It would be a strange and tragic departure from the rules of common sense that constitute the law to require such gesture and thereby thwart the avowed and laudable purpose of Mrs. Lefforge to give the family property to the one whom she regarded as her son in preference to strangers to her fireside circle. It would be the adoption of a rule of foolishness and injustice from which it is the proper function of the law to guard the citizenry, to hold that she failed in her purpose because of the trivial technicality of failure to touch pen to paper that already bore her undisputed and then adopted signature.

While a state of facts similar to those that are present in the instant case has not heretofore been presented to the courts of appeal in this State, the rules which we have applied to them are not new.

Our Supreme Court called attention to the rule permitting the adoption of a previously written signature

in the case of *Nye* v. *Lowry* (1882), 82 Ind. 316, 320, in which case it stated that a signature, even though previously written by another without the knowledge of the grantor, could be adopted by the grantor. It used the following language:

> "In our opinion, the signature of the grantor in a deed, written by another at his request, or, though written without his knowledge, *if adopted by him as his own,* has the same validity as if written by his own hand—indeed, within the meaning of the law, it becomes his proper handwriting, and the deed so signed is of the same validity as if written by his own hand; and the deed so signed, acknowledged and delivered, if subject to no other vice, is in all respects effective." (Our italics.)

Our Supreme Court in the case of *Sims* v. *Smith, supra,* gave effect to the rule that the date of delivery being the date of the transaction, a deed, though signed when under disability, is good if delivered after the disability is removed. In that case a deed was signed and acknowledged by an infant but not delivered until after she had arrived at legal age. The court held the deed to be an effective conveyance and in explanation of its holding said at p. 475:

> "It is well settled by the authorities that the delivery of a deed is a part of its execution, . . . and such delivery is essential to pass the legal title to the property. . . . A deed takes effect from its delivery. . . . And it may be written, signed, acknowledged and certified, and still be inoperative for want of delivery, whether the grantor be an infant or an adult. . . . The alleged infirmity of the deed in question grew out of the appellant's supposed disability of infancy. . . . In this case the execution of the deed was not consummated until the deed was delivered, and as it was not delivered, or the possession of the property conveyed surrendered to the appellee, as found by the court, until after the appellant became an adult, the deed was valid, . . ."

The rule that the date of delivery is the date at which the legal status of the parties is to be determined was applied by this court in the case of *Harwood* v. ■ *Masquelette, supra.* In that case a deed was prepared and signed naming a grantee corporation at the time not in existence. The corporation was afterward duly organized and the deed was then duly delivered to it. The court said at p. 344:

"Prior to the instant of delivery it may be conceded that it was a nullity so far as vesting title to the premises was concerned. But no effect is claimed for it prior to the time of its delivery to the corporation. It will surely be conceded that if one who has agreed to convey certain land to a corporation to be formed should, before its actual existence, write, sign and acknowledge a paper in the form of a deed, designating as grantee the name under which the corporation afterwards receives its charter or certificate, that when the company should finally become a corporate entity, he might deliver this paper to it, and thereby vest in it a good title from the moment of delivery."

Facts similar to the ones in this case were presented to the Supreme Court of the State of New York in the early case of *Doe* v. *Howland* (1828), 8 Cowen 277, 283, 284. In that case a husband and wife, being owners of certain real estate as tenants by the entireties, signed, acknowledged and delivered a deed thereto. The deed was ineffective as a conveyance because the wife's acknowledgment was not in compliance with the statute of that state in force at that time. After the death of the husband the widow re-acknowledged correctly the same instrument with intent to make the conveyance valid and complete. She was at that time the sole owner of the real estate. After the death of the wife, her heirs claimed title on the theory that the deed was ineffective. They contended that the deed was void during the life of her husband, lost all vitality upon the death of the

husband, and could not be made effective. They further urged that the widow re-acknowledged as a *feme covert* whereas she was sole. Their opponents contended that the re-acknowledgment amounted to a redelivery and made the deed effective as her then deed. The court said:

"If, indeed, this acknowledgment was void, and passed no estate, then Mrs. Charlton was seised at her death, and the plaintiff must recover, unless, by her acts, she was estopped from asserting her title. But why should a deliberate act of this kind, by a person competent to convey, be inoperative and void? The instrument contains, upon its face, everything necessary to a perfect conveyance. She is described, indeed, as a *feme covert*; and her husband is a party with her; but there is no question as to the identity of the grantor. There is, perhaps, a false description, and a person inserted as grantor, not *in esse*, when she acknowledges the deed. But it is still her act and her conveyance. It is sufficient for transferring all her interest to the grantee for the purposes expressed. It cannot be denied, that after the death of her husband, when she became sole owner, she alone might have conveyed the premises to Mr. Munro. Then, does the name of her deceased husband vitiate her deed? Surely not. It is merely surplusage. It has no effect whatever. Suppose a sole owner of a lot of land draws a deed conveying his land upon sufficient consideration, and in due form; and three or four names are inserted in the body of the deed as grantors, but no one signs except the owner; can he reclaim the land which he has thus conveyed, on the ground that the other grantors did not convey; or can a *feme sole* avoid her deed by describing herself as a *feme covert*? Clearly not. On what ground is it, then, that the acknowledgment by Mrs. Charlton, after the death of her husband, is not a perfect execution of the deed. It is very clear to my mind, that this act of Mrs. Charlton amounted to a conveyance of her interest in the premises."

The court then quoted with approval from the case of *Jackson* v. *Stevens* (16 John 110) as follows:

" 'But although she signed and sealed the instrument, it was not her deed, until she had acknowledged it according to the statute. It could not bind her as a contract. She was not confirming an inchoate and imperfect agreement. The deed took its efficacy from the period of her acknowledgment, and there was nothing prior, to which it could relate.' "

Facts similar to those in the instant case were presented to the Appellate Court of Ohio in the case of *Goodman* v. *Goodman* (1926), 20 Ohio App. 419, 422, 152 N. E. 200. In that case Mrs. Goodman joined with her husband conveying certain of his separate property to his son by a former marriage. The deed was not delivered during her husband's lifetime but after his death she delivered the deed to the named grantee. Later she claimed title to the property. The court said:

"The contention of her counsel is that, as said deed was not delivered during the lifetime of Mr. Goodman, the delivery of the same after his death was ineffectual to convey his interest in the property to his son, and that, therefore, the deed being void for want of delivery, it did not and could not operate to convey her interest in such property.

"With this contention we cannot agree. We are familiar with the general rule that a release in a deed by the wife of her *inchoate* right of dower stands or falls with the instrument in which it is contained. Such release being only an incident to the conveyance, if the conveyance fails such dower reverts *eo instanti* to the wife. But we do not find that the reasons for the rule apply to the transfer of a dower interest which has become *vested*. Counsel for plaintiff admit that, if after the death of her husband Mrs. Goodman had executed and delivered a conveyance of her vested dower to the defendant, who by inheritance was the owner of the fee, such conveyance would have been effectual to bar her of any dower in the property. After the death of her husband, and when her dower had become vested, we know of no good reason why Mrs. Goodman

could not, if she desired to do so, instead of executing a new conveyance, make the one she had already executed effectual by knowingly delivering the same for the purpose of conveying her dower interest to the son.

"Mrs. Goodman was a joint maker of the deed, and the deed is so worded as to convey all of her interest in the property, whether vested or inchoate; and, where there is more than one grantor, a delivery may be good as to one grantor if not as to all. (Citations.)

"During the lifetime of Mr. Goodman and after his death the paper writing, denominated a deed, which he and his wife had executed, was of no force or effect whatever because of want of delivery during the lifetime of Mr. Goodman, and, of course, could not by delivery after his death be made effectual as a conveyance *from him*. By the very fact that it was of no effect, the dower interest of Mrs. Goodman was preserved, and by the husband's death her dower interest was changed from inchoate to vested, and became subject to disposition by her *independent* action.

"Up to the time of the delivery said deed was as ineffectual to convey her interest in the property as it was to convey Mr. Goodman's; it was a mere scroll and could have been changed by the grantors in any way they desired. (Citations.)

"After the death of Mr. Goodman it remained a mere scroll; the wife as a joint grantor could then have erased the husband's name therefrom and delivered it as a deed from her alone. The fact that it was dated and executed before the husband's death is not important; the question being as to whether or not it is valid as *her* deed.

"Plaintiff intended all the time to convey her interest in the property to the defendant, and, if delivered, the instrument which she had signed would accomplish her purpose. She elected to deliver it and thereby effectually carried out her intention, and the record discloses no good reason why she should not be bound thereby."

See also *Saunders* v. *Blythe* (1892), 112 Mo. 1, 20 S. W. 319; *Jourdan* v. *Jourdan* (1823), 9 Serg. & Rawle's Penn. Rep. 268, 11 Amer. Dec. 724.

Finding no reversible error, judgment is affirmed.

NOTE.—Reported in 38 N. E. (2d) 343.