**In re Estate of Juan T. Camacho,**
Deceased.
Appeal No. 90-026
Civil Action No. 87-0638
July 30, 1993

Argued and Submitted June 24, 1993

Counsel for appellant/estate administrator Luis S. Camacho: Douglas F. Cushnie, Saipan.

Counsel for appellee Carmen C. Nosek: Eric Basse, Saipan.

BEFORE: DELA CRUZ, Chief Justice, and VILLAGOMEZ and ATALIG, Justices.

ATALIG, Justice:

This is an appeal by Luis S. Camacho ("Luis"), the administrator of the estate of Juan T. Camacho ("Pop"), from a probate court order[1] in which certain real property was deemed not a part of Pop's estate, by virtue of a 1977 deed of gift from Pop to Carmen C. Nosek ("Carmen"). Luis argues that the deed had earlier been determined to be of no force and effect.[2] He contends that the doctrine of res judicata bars the litigation of the validity of the deed. We hold that Pop's 1977 deed of gift to Carmen was valid as to that portion of the property not previously given to Luis and Juan, and that the doctrine of res judicata does not bar the litigation of the ownership of the land disputed in this matter.

## ISSUES PRESENTED AND STANDARD OF REVIEW

The issues raised for our review are:

I. Whether the doctrine of res judicata bars the determination of the validity of the 1977 deed to Carmen from Pop.

II. Whether the probate court erred in holding that the 1977 deed to Carmen from Pop was valid.

■■■ Whether or not the litigation of an issue is barred by res judicata is a question of law reviewable de novo. *Sablan v. Iginoef*, 1 N.M.I. 190, 197 (1990), *appeal dismissed sub nom.*, *Sablan v. Manglona*, 938 F.2d 970 (9th Cir. 1991). The determination of the validity of a deed is a question of law also subject to de novo review. *Cf. Santos v. Matsunaga*, 3 N.M.I. 221, 225 (1992); *In re Estate of Mueilemar*, 1 N.M.I. 441, 444-45 (1990) (conclusion of ownership made by probate court subject to de novo review).

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts

Pop owned Lot 1340 A, located in As Hare, Saipan. He had five children: Luis, Antonio S. Camacho, Juan S. Camacho ("Juan"), Maria C. Vaughn, and Carmen. In 1970, Pop told Luis, Juan and Carmen that he would give each of the three, respectively, the southern, middle and northern portions of Lot 1340 A. Luis and Juan's shares were each to be 1.5 hectares; Carmen's share was one hectare. Juan later sold Luis and his wife, Fermina M. Camacho ("Fermina"), his share.

On April 2, 1973, Pop confirmed the conveyance to Luis of the southern portion of Lot 1340 A, consisting of 1.5 hectares, and Luis's purchase of the middle 1.5 hectares from Juan. The document was entitled "Ultimo na Testamento" ("Testamento"). On November 3, 1975, Pop declared before the Land Registration Office that he had given Carmen the northeast part of Lot 1340 A, consisting of one hectare. Later, on November 8, 1977, Pop conveyed by deed of gift to Carmen the northern 19,108 square meters of Lot 1340 A.[3] A portion of the property conveyed by this deed overlapped with the middle portion of Lot 1340 A Luis and Fermina purchased from Juan.

Pop died intestate on July 22, 1979, survived by his five children.

### II. Action to Set Aside 1977 Deed

On February 22, 1985, Luis and Fermina filed a complaint against Carmen in the Commonwealth Trial Court. They sought to set aside the 1977 deed to Carmen on the ground that it conveyed approximately 2,538 square meters of the northern portion of their land, which Luis and Fermina had purchased from Juan. They further alleged that Carmen improperly asserted ownership rights to Juan's share and that the deed was procured by undue influence. The trial court ruled against submitting the Testamento to the jury, concluding that it was a will which had been revoked by the subsequent deed to Carmen. The jury returned a verdict in favor of Carmen and judgment was entered on March 8, 1986. On appeal, the U.S. District Court for the Northern Mariana Islands, Appellate Division, reversed. It held that the lower court erred in withdrawing from jury consideration the Testamento and related testimony offered for the

---

[1] *In re Estate of Camacho*, Civ. No. 87-0638 (N.M.I. Super. Ct. Sept. 4, 1992) (Order).

[2] *See Camacho v. Nosek*, App. No. 86-9009 (D.N.M.I. App. Div. Jan. 30, 1987) (Order); *Camacho v. Nosek*, Civ. No. 85-0098 (N.M.I. Trial Ct. Mar. 23, 1988) (Judgment).

[3] This area includes and expands upon the one hectare portion of Lot 1340 A earlier given to Carmen by Pop.

23

purpose of proving that Pop had made an oral transfer of the middle portion of the lot to Juan, who sold this portion to Luis and Fermina. *Camacho v. Nosek*, App. No. 86-9009 (D.N.M.I. App. Div. Jan. 30, 1987) (Order). On remand, the jury rendered a verdict in favor of Luis and Fermina. The court entered judgment to the effect that Luis and Fermina were the fee simple owners of that portion of Lot 1340 A which runs from the southern portion of Lot 1340 A already owned by Luis and bounded on the north by a line running from a rock near a kamachile tree in a westerly direction.[4] *Camacho v. Nosek*, Civ. No. 85-0098 (N.M.I. Trial Ct. Mar. 23, 1988 (Judgment). This description, which includes the "middle portion," covers also an approximately 2,538 square meter section of the land conveyed by Pop to Carmen in the 1977 deed.

## III. Probate Proceedings

This probate case originated in 1987 when Luis filed a petition to probate Pop's estate. *See In re Estate of Camacho*, Civ. No. 87-0638 (N.M.I. Trial Ct.). On November 3, 1987, Luis was appointed administrator by the court. An inventory of the assets of the estate was filed on November 23, 1987, listing as the sole asset a Bank of Guam savings account in the amount of $11,688.35. Pursuant to the decree of distribution, this sum was to be distributed, less expenses and costs, in equal shares to each of Pop's five children.

On March 21, 1991, three years after the estate was closed, Luis filed an "Ex Parte Motion to Reopen the Estate." He averred that approximately 6,569 square meters out of the 19,108 square meters of Lot 1340 A which Pop had conveyed to Carmen in the 1977 deed (immediately north of the approximately 2,538 square meters awarded by the trial court in the 1988 judgment)

belonged to the estate and was subject to distribution.[5] The motion to reopen the estate was granted. Luis filed an "Amended Inventory and an Amended Petition for Final Distribution,"[6] to both of which Carmen objected. She also filed a "Statement of Claim or Interest" adverse to the estate, and requested summary judgment based on her contention that on November 8, 1977, Pop had conveyed to her by deed of gift the real property being listed as an estate asset.

The probate court ruled that the validity and effect of the 1977 deed to Carmen from Pop was never adjudicated, either on appeal or at the trial upon remand. *See In re Estate of Camacho*, Civ. No. 87-0638 (N.M.I. Super. Ct. Sept. 4, 1992) (Order at 4-5) (quoting transcript at 153, *Camacho v. Nosek*, Civ. No. 85-0098 (N.M.I. Trial Ct.)).[7] The court then ordered the parties to submit distribution schemes consistent with the deed being valid.[8] Luis appealed this order which we now review.

---

[5] This leaves approximately one hectare, or 10,000 square meters, of the northern portion of Lot 1340 A belonging to Carmen pursuant to the 1970 oral transfer and the declaration before the Land Registration Office. The monies in the estate had not yet been distributed to each of the children pursuant to the original decree of distribution.

[6] The inventory included the savings account of over $13,000 and a portion of Lot 1340 A now listed as consisting of 6,569 square meters. The proposed distribution requested that the property be broken into five lots, three of which consisted of 1,576 square meters (Lots 1340 A-2, 1340 A-3 and 1340 A-4), one consisting of 1,575 square meters (Lot 1340 A-5) and one of 266 square meters (Lot 1340 A-R/W). *See* Appendix *in* Appellant's Excerpts of Record, Exhibit A.

[7] "Court: Fred's line or the 1977 deed is not an issue. It's not an issue. The issue is the 1970 transaction, you know, and following that the 1973 Testimento [sic]. But the '77 deed is not an issue." Transcript at 153, *Camacho v. Nosek*, Civ. No. 85-0098 (N.M.I. Trial Ct. Mar. 21, 1988) (*quoted in In re Estate of Camacho*, *supra* note 1 (Order at 4)).

[8] Although the court required distribution schemes to be submitted, it appears that this was inconsistent with its holding that the real property was not an asset of the estate but Carmen's property. We read this to mean the submission of a proposed distribution of the monies in the estate, less legitimate expenses and costs of administration. The court also noted that neither party appeared to contest the validity of the deed proper. While the appellant, in *Camacho v. Nosek*, *supra* note 7, prior to the appeal to the Appellate Division, argued that Carmen procured the 1977 deed by undue influence over Pop, that argument was not sustained in the matter below.

---

[4] [T]hat certain parcel of property within Lot 1340 A, AS HARI, Saipan, Mariana Islands, which abuts the south portion of Lot 1340 A owned by Luis S. Camacho and is bounded on the north by a line running from the rock near the kamachile tree thence in a westerly direction to the mango tree near the westerly border of Lot 1340 A. This boundary line is described in Defendants' Exhibit E and has a bearing of N 45E 11' 32" W.

*Camacho v. Nosek*, Civ. No. 85-0098 (N.M.I. Trial Ct. Mar. 23, 1988) (Judgment).

## ANALYSIS

Luis argues that the 1977 deed to Carmen was, in its entirety, previously held to be of no force and effect by the Appellate Division's 1987 ruling. On remand from that ruling, the same deed was held to be null and void.[9] Hence, the doctrine of res judicata bars Carmen from raising the issue of the validity of the deed. Carmen, on the other hand, contends that the *Camacho* rulings neither adjudicated the validity or effect of the 1977 deed nor determined the ownership of the northern portion of Lot 1340 A.

### I. Whether the Doctrine of Res Judicata Bars the Determination of the Validity of the 1977 Deed to Carmen from Pop

■■■■■■ Where a valid and final judgment[10] is rendered on a claim, res judicata will bar subsequent litigation on the original claim, see generally RESTATEMENT (SECOND) OF JUDGMENTS [hereinafter JUDGMENTS] §§ 17, 18 (1982), or a part thereof, see *id.* § 27 (issue preclusion), and "the parties to the suit and their privies are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.'" *Santos v. Santos*, 3 N.M.I. 39, 48 (1992) (citation omitted), (quoting *Commissioner v. Sunnen*, 333 U.S. 591, 597, 68 S. Ct. 715, 719, 92 L. Ed. 898 (1948), *cited in* 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, FEDERAL PRACTICE AND PROCEDURE [hereinafter "Wright & Miller"] § 4406 (1981)).

■■■■ The res judicata effect of a prior judgment depends upon the scope of the prior cause of action or claim. *Santos*, 3 N.M.I. at 49 (citing Wright & Miller § 4406); *see also* Wright & Miller § 4407. Res judicata will bar matters not only which were but which *should* have been litigated previously as well. *Santos, supra*; *see also Marianas Pub. Land Corp. v. Kan Pacific*

*Saipan, Ltd.*, 1 N.M.I. 431, 436-37 (1990) (citing JUDGMENTS §§ 24, 25).

■ In *Santos*, we decided that a claim relating to the ownership of a parcel of land previously distributed in a probate action under intestate succession was barred where the claimant's predecessor-in-interest knew of the probate proceeding, as presumptive heir, but did not object. That case, however, is distinguishable from this case; in *Santos*, the second action involved the issue of ownership of the *same* parcel of land that was previously distributed. With respect to the case before us, the subject matter of the 1985 lawsuit was the ownership of only a segment of the middle portion of Lot 1340 A, which Pop gave Juan who then sold it to Luis and Fermina. The record shows that neither the Appellate Division nor the trial court on remand considered either the validity of the deed relative to, or ownership of, the *northern* portion of Lot 1340 A.[11] This "northern portion" is that which did not belong to either Luis or Juan, but which was conveyed by Pop to Carmen. Additionally, we do not consider these issues ones that should have been raised in the earlier proceedings. As such, we conclude that the doctrine of res judicata does

---

[9] Appellant's Opening Brief at 4-5.

[10] The rules of res judicata are applicable only when a final judgment is rendered. However, for purposes of issue preclusion (as distinguished from merger and bar), "final judgment" includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect.

RESTATEMENT (SECOND) OF JUDGMENTS § 13 (1982).

---

[11] In support of his contention that the Appellate Division deemed the 1977 deed void, the appellant cites to a portion of that court's decision:

> If the jury should find that there occurred in 1970 a sale transaction between Juan and Appellant, such a sale would have divested Pop Camacho of any right, interest, or ownership in *Juan's share* and Pop Camacho could not subsequently transfer any part thereof to [Carmen]. As a result, any subsequent deed would have been void and of no force and effect regardless of the lack of undue influence. At the same time . . . if the 1970 transaction never occurred, even after seeing the Testamento and considering all testimony surrounding it, then Appellant never acquired any interest in the share of Juan's and either Pop or Juan would be free to dispose of the same share at their discretion.

*Camacho v. Nosek*, App. No. 86-9009 (D.N.M.I. App. Div. Jan. 30, 1987) (Order at 6). However, this passage shows not only that the portion of the order upon which the appellant relies is dicta but that its context concerns Juan's share and not other portions of the land Pop conveyed. Additionally, this statement was made in relation to the undue influence claims Luis and Fermina raised in the trial court proceedings, an issue not raised either on remand or in the probate matter below.

not bar the litigation concerning the northern portion of Lot 1340 A that Pop conveyed to Carmen under the 1977 deed.[12]

## II. Whether the Probate Court Erred in Holding that the November 1977 Deed to Carmen from Pop was Valid

Luis argues that the 1977 deed had been determined earlier to be of no force and effect. As such, the land remained in Pop's estate. This argument is based upon the doctrine of res judicata which, as noted above, is inapplicable to the northern portion of Lot 1340 A. We also infer from his argument that, because Pop's deed to Carmen conveys some land which Pop did not own, it is void in its entirety. We disagree.

 Where a grantor conveys land to a grantee which he does not own *in part*, the operative effect of the conveyance is valid as to the area the grantor owns. *See, e.g., Miller v. Miller*, 38 N.E.2d 343 (Ind. 1942). Pop owned the northern portion of Lot 1340 A, hence his conveyance to Carmen as to that portion was valid. Additionally, courts will construe a deed in a manner that will uphold the validity of the conveyance, if possible, as the "paramount rule of construction of deeds is to give effect to the intention of the parties." *Mesa v. Manglona*, 3 CR 914, 920 (N.M.I. Super. Ct. 1989); *cf. Ontario Land Co. v. Yordy*, 212 U.S. 152, 29 S. Ct. 278, 53 L. Ed. 449 (1909) (deed valid where property conveyed ascertainable from description and extrinsic evidence). Pop intended to convey the northern portion of the land to Carmen, the middle portion to Juan and the southern portion to Luis. Both Luis and Juan received their respective shares and Carmen's share was increased by Pop himself.

## CONCLUSION

Accordingly, we **AFFIRM** the trial court decision and **REMAND** for further proceedings, as the trial court deems necessary.

---

[12] We note that the probate court did not clarify the extent to which the 1977 deed was valid. While the ownership of the northern portion of the property was not previously litigated, that regarding the middle portion was. Hence, an action regarding the ownership of the middle portion of the property, between the same parties, would be barred under the doctrine of res judicata.